```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                  HOUSTON DIVISION

 3
      UNITED STATES OF AMERICA    *   4:17-CR-419
 4                                *
      VS.                         *   9:00 a.m. to 5:50 p.m.
 5                                *
      GAZELLE CRAIG, D.O., AND    *
 6    SHANE FAITHFUL              *   FEBRUARY 8, 2018

 7                        TRIAL
             BEFORE THE HONORABLE DAVID HITTNER
 8                     AND A JURY
                    Day 9 of 10 Days
 9
```

10  **APPEARANCES:**

11  **FOR THE UNITED STATES OF AMERICA:**
    Mr. Scott Philip Armstrong
12  Mr. Devon Morel Helfmeyer
    U.S. Department of Justice
13  1400 New York Avenue NW
    Washington, DC 20005
14  (202) 355-5704

15  **FOR THE DEFENDANT, GAZELLE CRAIG, D.O.:**
    Mr. Don E. Lewis
16  Attorney at Law
    17617 St. James Place
17  Suite 625
    Houston, Texas 77056
18  (713) 622-0318

19  **FOR THE DEFENDANT, SHANE FAITHFUL:**
    Mr. Cornel A. Williams
20  Williams and Associates
    1405 Palm Street
21  Houston, Texas 77004
    (713) 520-5153
22

23

24

25

**APPEARANCES:**

**ALSO IN ATTENDANCE:**
Mr. Michael Mills
Mr. James Gainer
Dr. Gazelle Craig, D.O.
Mr. Shane Faithful
Ms. Saba Mortezavi

Court Reporter:
Laura Wells, RPR, RMR, CRR
515 Rusk, Suite 8004
Houston, Texas 77002

Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

**DAY 9**
**(Trial)**

February 8, 2018

| | Page |
|---|---|
| Jury Note....................................... | 1721 |
| Motion for Mistrial............................. | 1722 |
| Motion for Mistrial............................. | 1722 |
| Ruling of Court................................. | 1723 |
| Jury Note....................................... | 1724 |
| Motion for Mistrial............................. | 1724 |
| Motion for Mistrial............................. | 1725 |
| Ruling of Court................................. | 1725 |
| *Allen* Charge.................................. | 1726 |
| Jury Note....................................... | 1728 |
| Court Reporter's Certificate.................... | 1748 |

**PROCEEDINGS**

1

2    (Jury deliberations continued.)

3    (Jury note to the Court.)

4         THE COURT:  All right.  Have a seat everybody.

5  Now, are the clients here or not here?

6         MR. LEWIS:  They went out for lunch.

7         THE COURT:  That's fine.  As long as they are

8  here and you waive their presence.

9         MR. LEWIS:  I do.

10         MR. WILLIAMS:  I will.

11         THE COURT:  You do or you will?

12         MR. WILLIAMS:  I will waive their presence.

13         MR. LEWIS:  I will waive their presence, Gazelle

14  Craig's presence.

15         THE COURT:  We have Jury Note Number 4.  "We are

16  unable to reach a unanimous decision."

17      What is the government's position?

18         MR. ARMSTRONG:  Judge, it's hard to know without

19  knowing the --

20         THE COURT:  I'm asking you.

21         MR. ARMSTRONG:  We would request an *Allen* charge,

22  without knowing more at this point.

23         THE COURT:  You would give an *Allen* charge before

24  you know any more?

25      Hold it.  Hold it.  I'm speaking to the lead counsel.

*Laura Wells, CRR, RDR*

1      How often have you seen a judge give an *Allen* when --

2 on the first go-around when they say that they are hung?

3           MR. ARMSTRONG:  I have not seen that personally,

4 Judge.

01:51:54    5           THE COURT:  Right.  All right.  What is the

6 defense's suggestion?

7           MR. WILLIAMS:  I move for a mistrial.

8           THE COURT:  All right.  A mistrial.

9           MR. LEWIS:  Gazelle Craig would also move for a

01:52:01   10 mistrial.

11           THE COURT:  All right.  They are moving for a

12 mistrial.  What is the government's position?

13           MR. ARMSTRONG:  Judge, we would request more

14 details to find out whether they are unanimous --

01:52:09   15           THE COURT:  So what should I do?

16           MR. ARMSTRONG:  May I confer with my colleague?

17           THE COURT:  No.  You.  You are the lead counsel.

18 I'm sorry.  Let's go.

19           MR. ARMSTRONG:  That's okay.  We would request

01:52:17   20 more information to see if they are unanimous on any of

21 the counts.

22           THE COURT:  Say that again.

23           MR. ARMSTRONG:  Request more information to see

24 if they are unanimous as to any count.

01:52:27   25           THE COURT:  Are you ready to do that?  Well, hold

1   it.  What is the standard response that you get in jury

2   cases when you get a note like this?  You have done this

3   all over the country.  What is the first response you'll

4   get out of -- with due respect to the defense, I'll rule

01:52:41   5   on your motions.  Okay.

6           MR. LEWIS:  Sure.

7           THE COURT:  What is the first response that you

8   send back with a note like this?

9           MR. ARMSTRONG:  Your Honor, I don't know.

01:52:48   10           THE COURT:  Mr. Helfmeyer.

11           MR. HELFMEYER:  I'm with Mr. Armstrong, Your

12   Honor.

13           THE COURT:  Have you ever had hung juries?

14           MR. HELFMEYER:  No, Judge.

01:52:56   15           MR. ARMSTRONG:  No, Judge.

16           THE COURT:  Ever?

17           MR. HELFMEYER:  No, Judge.

18           MR. ARMSTRONG:  No, Judge.

19           THE COURT:  All right.  The motion for mistrial

01:52:59   20   is denied.  All right.

21       Now, what suggestions does the defense have as to what

22   response ought to be put down to the jury?

23           MR. WILLIAMS:  If the -- given the Court's

24   ruling, to order the jury to keep deliberating.

01:53:14   25           THE COURT:  That's exactly what I'm going to do

1  at this time.

2          MR. LEWIS:  I join.

3          THE COURT:  Thank you.  All right.  The response

4  is, "Please continue your deliberations."

01:53:49  5      Ellen, if you would return that to the jury.

6          CASE MANAGER:  Yes, sir.

7          MR. WILLIAMS:  Thank you, Your Honor.

8          MR. LEWIS:  Thank you, Your Honor.

9      (Deliberations continued from 1:54 p.m. to 2:46 p.m.)

02:49:03  10     (Jury note to the Court.)

11         THE COURT:  All right.  Be seated.  Hang on one

12  second.  All right.  The jury note that we have is, "We're

13  still unable to reach a unanimous decision."  What is the

14  government's position?

02:49:16  15        MR. ARMSTRONG:  Your Honor, it's only been

16  45 minutes since the last response from the Court.  I

17  think that the last instruction should still hold to keep

18  deliberating.  And then if not --

19         THE COURT:  Tell me what your recommendation is

02:49:27  20  right now.

21         MR. ARMSTRONG:  Tell them to keep deliberating.

22         THE COURT:  All right.  What is the defense's

23  position?

24         MR. WILLIAMS:  Defense moves for a mistrial, Your

02:49:34  25  Honor.

*Laura Wells, CRR, RDR*

1    MR. LEWIS:  Defendant Craig moves for a mistrial.

2    THE COURT:  So you still want another one that

3  says please keep deliberating?  What is the other

4  alternative?

02:49:42   5    MR. ARMSTRONG:  The *Allen* charge, Judge.

6    THE COURT:  What is your request at this point in

7  time?

8    MR. ARMSTRONG:  At this point, we would request

9  to tell them to keep deliberating.

02:49:49  10    THE COURT:  I'm not going to keep them --

11  obviously, they are having a problem.  Then what?  So you

12  just want -- that's it?

13    MR. ARMSTRONG:  We request an *Allen* charge,

14  Judge.

02:49:56  15    THE COURT:  Well, now is the time to do it.

16    MR. ARMSTRONG:  We request an *Allen* charge.

17    THE COURT:  All right.  The motion for mistrial

18  by the defense is denied.  I will give them instructions

19  in court.  Give me one second.  I need to pull out -- I

02:50:09  20  have a new script, but I want to pull out the one that's

21  in my master file.  All right.  Have a seat.  Just have a

22  seat.  We're off the record.

23    (Discussion off the record.)

24    THE COURT:  Would you ask the jury to come back

02:53:57  25  in, please.  Let's just stay off the record.  Ellen is

*Laura Wells, CRR, RDR*

1    going to go round them up.  One of them is missing.

2         (Discussion off the record.)

3              THE MARSHAL:  All rise for the jury.

4         (Jury entered courtroom at 2:59 p.m.)

02:59:33   5         THE COURT:  Have a seat.  Ladies and gentlemen,

6    I'm going to give you some additional instructions.  I'm

7    going to ask that you continue your deliberations in an

8    effort to agree upon a verdict and dispose of this case.

9    And I have a few additional comments that I would like for

02:59:51  10   you to consider.

11        This is an important case.  The trial has been

12   expensive in time, effort and money to both the defense

13   and the prosecution.  If you should fail to agree on a

14   verdict, the case is left open and must be tried all over

03:00:08  15   again.

16        Obviously, another trial would only serve to increase

17   the cost to both sides; and there is no reason to believe

18   that the case can be tried again either by either side

19   better or more exhaustively than it has been tried before

03:00:25  20   you.

21        Any future jury must be selected in the same manner

22   and from the same source as you were chosen, and there is

23   no reason to believe that the case could ever be submitted

24   to 12 men and women more conscientious, more impartial or

03:00:41  25   more confident to decide it or that it's more -- or that

1  it would be more clear and that other evidence could be

2  produced.

3      Those of you who believe that the government has

4  proved the defendant guilty beyond a reasonable doubt

03:00:57   5  should stop and ask yourself if the evidence is really

6  convincing, even though other members of the jury are not

7  convinced.

8      And those of you who believe that the government has

9  not proved the defendant guilty beyond a reasonable doubt

03:01:13   10  should stop and ask yourselves if the doubt you have is a

11  reasonable one, given that the other members of the jury

12  do not share your doubt.

13     Remember, however, at all times that no juror is

14  expected to yield a conscientious opinion he or she may

03:01:35   15  have as to the weight or effect of the evidence; but

16  remember, also, that after full deliberation and

17  consideration of the evidence in the case, it is your duty

18  to agree upon a verdict, if you can do so, without

19  surrendering your conscientious opinion.

03:01:53   20     You must also remember that if the evidence in the

21  case fails to establish guilt beyond a unanimous

22  verdict -- I'm sorry.  Let's see.  You must also remember

23  that if the evidence in this case fails to establish guilt

24  beyond a reasonable doubt, the accused should have the

03:02:09   25  unanimous verdict of not guilty.

1     You may be leisurely in your deliberations as the

2  occasion may require, and you should take all the time

3  which you feel is necessary.  I'm now going to ask that

4  you retire once again and continue your deliberations with

03:02:23  5  these additional comments in mind to be applied, of

6  course, in conjunction with all of the instructions I have

7  previously given to you.

8     Please return to the jury room and continue your

9  deliberations.

03:02:35  10     THE MARSHAL:  All rise for the jury.

11     (Jury exited courtroom at 3:02 p.m.)

12     (Deliberations from 3:02 p.m. to 3:34 p.m.)

13     (Jury note to the Court.)

14     THE COURT:  The reason why this is out of

03:34:43  15  sequence, Ellen told me, is the jury wanted to pass it on

16  that this is a question they had right before lunch but

17  then they said, well, maybe we can't agree.  And now they

18  want to look at it again.  So this was a question.  That's

19  why it is not out of sequence.  We're receiving it as

03:34:58  20  Number 5.  It's marked as Number 3 because somebody had

21  already written it out.

22     MR. LEWIS:  It should be Number 6, shouldn't it?

23     THE COURT:  So we're taking it at this time,

24  regardless of what it says at the top.  But the jury, I

03:35:14  25  understand, they had not given this to my case manager

1    until right now; is that correct?

2              CASE MANAGER:  Yes, sir.

3              THE COURT:  All right.  "Can we have the

4    testimony for the expert, Craig Owen, concerning the

5    details of hydrocodone and carisoprodol?  Please include

6    any cross-examination on that portion."  They said just

7    let you know they want that portion.

8         What is the government's position?

9              MR. ARMSTRONG:  Judge, we propose either a

10   read-back or give them the transcript.

11             THE COURT:  Okay.  Defense?

12             MR. WILLIAMS:  I think the transcript would be

13   because we don't know what portion that they want.  They

14   said please include any cross-examination.  So --

15             THE COURT:  We're not going to -- okay.  So your

16   position is what?  Read it back to them?

17             MR. WILLIAMS:  No.  Give them the transcript

18   because we will be reading it -- you might be reading it

19   all day.  He was on the stand forever.

20             THE COURT:  No.  They want just those sequences.

21   And usually -- usually what happens is the court reporter

22   finds it, and then the court reporter is an officer of the

23   Court and goes in and reads it to them in there.  We don't

24   have to sit and allow it again.  We agree or I'll order

25   what section should be read back and what

1  cross-examination should be read back and then I tell the

2  court reporter to go in there to read it to them without

3  -- with the order to the court reporter not to make any

4  comment whatsoever.

03:36:38  5      So what is the government's position?

6          MR. ARMSTRONG:  Just as Your Honor described.

7          THE COURT:  What?  Do what?

8          MR. ARMSTRONG:  To have the court reporter read

9  back the excerpts.

03:36:46  10         THE COURT:  You have got to agree on it, correct?

11  You have to agree on the areas.  What is the defense's

12  position?

13         MR. WILLIAMS:  As long as we can agree, I think

14  that may be the best method.

03:36:55  15         THE COURT:  If you can't, I'll make the ruling.

16  And then, if necessary, we will get a transcript.

17  Generally, if you agree or whatever, I'll listen to where

18  it is on the transcript.  We're not going to redo and give

19  them the whole transcript.  The doctor was on, what, a

03:37:08  20  good part of the day, wasn't he?

21         MR. ARMSTRONG:  About four hours.

22         THE COURT:  All right.  If you would, I'm going

23  to put -- once you -- will you tell the jury now or you'll

24  see me -- I'll stick my head in there and say we're going

03:37:27  25  to find the sections you want and we'll get it read back.

All right.  Because I usually put on here portions read

back and then sign it.  So rather than let them stew -- or

do you want the case manager to do it instead of me?  Does

it matter?  I need some feedback.

03:37:48     MR. WILLIAMS:  Well, I guess the case manager has

been communicating with them.

          MR. LEWIS:  Yes.

          THE COURT:  That's what I mean.

          MR. WILLIAMS:  We need to be consistent with

03:37:56  that.

          THE COURT:  All right.  Then you need to get

together with the court reporter.

     Were you here for the doctor?

          THE REPORTER:  Yes, Your Honor.

03:38:07     THE COURT:  What is his name?  Dr. Graves Owen.

Okay.  We need to look back to find those areas and then

find your cross-examination on that guy.

          MR. ARMSTRONG:  I'm just thinking --

          THE COURT:  What is your confusion?  Let me know.

03:38:20  Otherwise, we've got to get going.

          MR. ARMSTRONG:  Judge, I'm thinking of the best

way we could do this.  Laura has sent us drafts of the

transcript; and it might be more efficient if we go back,

print the drafts and both sides highlight the portions to

03:38:33  be sent back.

1          THE COURT:  Where are -- where are they?

2          MR. ARMSTRONG:  Downstairs on our computers.

3          THE COURT:  All right.  Why don't ya'll work

4     together on it.  That would probably be the better way.

5          MR. WILLIAMS:  I have no problem with that.

6          THE COURT:  All right.  Ellen, would you tell the

7     jury that we are in the process of locating and running

8     off the transcripts of the direct and cross-examination of

9     the doctor relative to just this matter.  Okay.  All

10    right.

11         And then usually I just hold this, Ellen, until it

12    goes back in?

13         CASE MANAGER:  Yes, sir.  Yes, sir.

14         THE COURT:  All right.  Off the record.

15     (Recess from 3:39 p.m. to 4:29 p.m.)

16         THE COURT:  All right.  Have a seat.  What did

17    you find?

18         MR. WILLIAMS:  A lot.

19         THE COURT:  Did you find the areas you need to

20    have found?

21         MR. WILLIAMS:  Yes.  I think there might be

22    conflicts as to what they think should come in and what I

23    think should come in, and it's a lot.

24         THE COURT:  Okay.

25         MR. ARMSTRONG:  We can start with what we agree

*Laura Wells, CRR, RDR*

1  on, which is a lot.  There are probably seven or eight

2  pages that we both agree on that can come in.  There is no

3  objection on either side.

4          THE COURT:  Say that again.

04:29:41  5          MR. ARMSTRONG:  There is no objection on either

6  side.

7          THE COURT:  I don't want to see that.  I want to

8  see just the areas you disagree on.

9          MR. ARMSTRONG:  Yes, sir.

04:29:48  10          THE COURT:  I need a transcript.  Do we have our

11  transcript?

12          LAW CLERK:  Yes, sir.  I don't have the full

13  transcript.  I just have portions.

14          THE COURT:  Let's see.  Let me see.  You never --

04:30:04  15          LAW CLERK:  I can print the full portion.

16          THE COURT:  Okay.  What is in conflict?  What

17  page?

18          MR. ARMSTRONG:  The first point in conflict is

19  Page 150 of the draft.

04:30:16  20          THE COURT:  All right.  I have Page 150 right

21  here.  What is it that you disagree on?

22          MR. ARMSTRONG:  The whole page, starting with the

23  first full question.

24          THE COURT:  Okay.  You want it in?

04:30:27  25          MR. ARMSTRONG:  Yes, Judge.

1          THE COURT:  And they want it out?

2          MR. LEWIS:  That's correct.

3          THE COURT:  Okay.  Let me read it.  I'm going the

4    rule as we go.  Okay.  Therefore, I'm on Page 150 of the

04:30:37  5    transcript beginning at, what?

6          MR. ARMSTRONG:  The first full question.

7          THE COURT:  The first full question "Is

8    prescribing hydrocodone --"  Okay.  All right.  Where does

9    it stop?  Just the whole first page?

04:31:02  10         MR. ARMSTRONG:  Just this page, Judge.

11         THE COURT:  Your objection?

12         MR. WILLIAMS:  My objection, Judge, I think the

13   question goes to it's under the details of hydrocodone and

14   carisoprodol.

04:31:16  15        THE COURT:  Hold it a second.  I know what.  I'm

16   going to go talk to the jury.  I'm just going to stick my

17   head in here saying we're going through; and I am just

18   going to hold up the transcript, just so you see we have

19   got transcripts.  This is all I'm going to hold up.  I

04:31:29  20   will say we're working on it, and now I'm going to rule on

21   it.  The attorneys have worked on it.  Now we're doing it

22   in court.  I do that so they know what is going on out

23   here.

24        Okay.  So what do you figure?  Another ten minutes?

04:31:42  25         MR. WILLIAMS:  That should cover it.  Don't you

1  think?

2          MR. ARMSTRONG:  Yes, Judge.

3          THE COURT:  Now, I'm going to keep the door open

4  so you can hear what I have to say.  So if you would, I

5  will ask the court reporter to take this down.

6          (Jury room door open.)

7          THE COURT:  Okay.  Ellen, hold the door open.

8      I have got the transcript.  I'm on with the court

9  reporter.  We have pulled the areas we think you want to

10 see.  Okay.

11     Now, the next thing we're doing is some want parts in

12 and in some want parts out.  So now they have agreed on

13 almost all that they can, and we have got another five or

14 ten minutes.  I just got out here to see the ones that

15 they have a conflict as to what is coming in to you or

16 not.  That's exactly where we are at.

17         JURORS:  Thank you.

18     (Jury room door closed.)

19         THE COURT:  That makes all the difference, you

20 know it, when they are just sitting around there just

21 looking and waiting.  Okay.

22     Yes.  Your objection, please.

23         MR. WILLIAMS:  My objection was, Judge, that line

24 of questioning does not go to the -- does not go to the

25 question that the jury asked, which was the testimony of

1  expert Owen regarding the details of hydrocodone and

2  carisoprodol.  I can't pronounce it either.

3          MR. LEWIS:  Carisoprodol.

4          MR. WILLIAMS:  Carisoprodol; is that correct?

5  Soma.

6          THE COURT:  Okay.  That's it?

7          MR. WILLIAMS:  That is.

8          THE COURT:  Okay.  All right.

9      All the ones you've agreed on will go back.  As far as

10  this first objection goes, objection overruled.

11      All right.  What is the next section you disagree on?

12          MR. ARMSTRONG:  The next section we disagree on

13  is starting on Page 153, Judge.

14          THE COURT:  Page 153 starting where?

15          MR. ARMSTRONG:  Starting when we're back on the

16  record carrying through to page --

17          THE COURT:  Where back on the record?  That's

18  right at the top?

19          MR. ARMSTRONG:  Yes, Judge.

20          THE COURT:  Okay.

21          MR. ARMSTRONG:  Carrying over to Page 154, the

22  answer right above the timestamp 14:28.

23          THE COURT:  Right through where it says "first of

24  all;" is that correct?

25          MR. ARMSTRONG:  Through, "To do what?  To use to

1    abuse" on Page 154.

2         THE COURT:  You say right above 14:28.  There are

3    two 14:28's.

4         MR. ARMSTRONG:  Correct.  They are all 14:28.  My

04:34:10  5    apologies.  Through the question and answer in the middle

6    of the page, the "to do what" question and --

7         THE COURT:  Hold it.  The "to do what" question

8    and --

9         MR. ARMSTRONG:  "ANSWER:  To use to abuse."

04:34:20  10        THE COURT:  Let me look at the question the jury

11   gave again.  Where is that question?  It's down here on my

12   desk.  Here it is.  I have got it.  Okay.

13      Once and again, what is the last tender you have on

14   Page 154?  Through what page to where?  Again, where does

04:35:22  15   it end?

16        MR. ARMSTRONG:  "QUESTION:  To do what?"

17      "ANSWER:  To use to abuse."

18         THE COURT:  Okay.  What is the objection?

19         MR. LEWIS:  The objection, Judge, is on page -- I

04:35:35  20   guess it's 153.  The question that's begins, "Dr. Owen,

21   you are still under oath."

22         THE COURT:  Right.

23         MR. LEWIS:  Down to "less addictive than Schedule

24   IV."  Those are not details of the drug.  We're talking

04:35:50  25   about the schedules and the differences in the schedules

1   for a controlled substance.

2           MR. ARMSTRONG:  Is that your objection?

3           MR. WILLIAMS:  Yes.

4           THE COURT:  Where do you object to?  What do you

04:36:02  5   object?

6           MR. LEWIS:  We object down to the question that

7   says, "Is a Schedule II drug more addictive than a

8   Schedule IV drug?"

9           THE COURT:  All right.  What is Soma?  Schedule

04:36:18  10  what?

11          MR. LEWIS:  IV.

12          THE COURT:  And hydrocodone?

13          MR. ARMSTRONG:  II.

14          MR. LEWIS:  II.  But again, Judge, my objection

04:36:25  15  goes to this is an explanation regarding the differences

16  in schedules, not necessarily the differences in the drugs

17  themselves.

18          THE COURT:  Okay.  Is that your only objection?

19          MR. LEWIS:  That is.

04:36:33  20          THE COURT:  Overruled.  That's in.  All right.

21  Next objection, please.

22          MR. ARMSTRONG:  Judge, Page 212.

23          THE COURT:  Page 212?

24          MR. ARMSTRONG:  Yes, Your Honor.

04:36:47  25          THE COURT:  Okay.  I've got 212.

1          MR. ARMSTRONG:  Through 213.

2          THE COURT:  Well, where do you begin on 212?

3          MR. ARMSTRONG:  212, the last full question on

4    the page.

04:37:02  5          THE COURT:  "What I said is that people are on

6    long-term?"  Is that it?  Is that where you are tendering

7    that you can't agree on or what?

8          MR. ARMSTRONG:  No, Your Honor.

9          THE COURT:  What does it begin with?

04:37:10  10         MR. ARMSTRONG:  The first --

11         THE COURT:  What is the area that's in

12   controversy and begins with what question?

13         MR. ARMSTRONG:  I understand.  I think that maybe

14   we might be on different pages.  We are on 212, and the

04:37:21  15   defense tender for this point is --

16         THE COURT:  The defense tender.  No.  What is it

17   that you disagree to go in?

18         MR. ARMSTRONG:  Court's indulgence.  The point of

19   disagreement --

04:37:45  20         THE COURT:  Hold it.  Slow down.

21         MR. ARMSTRONG:  The United States --

22         THE COURT:  What is the part of the disagreement?

23         MR. ARMSTRONG:  From the last full question on

24   Page 212.

04:37:51  25         THE COURT:  Which starts what?  "What I said is"?

1        MR. ARMSTRONG:  No, Judge.  It says, "Okay.  That

2   makes sense."

3        THE COURT:  So we're starting with that question,

4   "Okay."  You want to put that in through what?

04:38:04   5        MR. ARMSTRONG:  Through Page 213 ending in the

6   second answer from the bottom.  "It's the most

7   commonly-prescribed opioid and it's -- as a result, it's

8   also the most commonly-abused opioid."

9        THE COURT:  All right.  Let me read it, please.

04:38:49  10   Okay.  What is your objection?

11        MR. WILLIAMS:  Your Honor, that line of

12   questioning was on cross-examination.  And my position is

13   going to be with the Court that if we are going to start

14   there, we need to back up to Page 211 because there are

04:39:03  15   questions that come before that that addresses what I

16   believe the jury question -- the jury wants, based upon

17   the question that was asked.

18        THE COURT:  Okay.  That's it?

19        MR. WILLIAMS:  No.  I'd like to read into the

04:39:20  20   record where I would like to start.

21        THE COURT:  Is that it for the government?

22   Anything further from the government?

23        MR. ARMSTRONG:  No, Judge.

24        THE COURT:  Objection sustained to that one.

04:39:28  25   Don't look at me like that.  You are too much of a pro to

1    do that.  I just said I'm keeping it out.

2              MR. ARMSTRONG:  That's fine.  Thank you, Judge.

3              THE COURT:  Also, don't say thank you to a judge

4    when he rules against you.

04:39:41   5              MR. ARMSTRONG:  Thank you, Judge.

6              THE COURT:  You really eat somebody out and they

7    say, "Thank you, Your Honor."

8         The jury is looking and says, Well, he thanked him for

9    it.  Did the Judge -- did he overrule him or not?

04:39:50   10        All right.  What do we do next?

11             MR. ARMSTRONG:  So that one is out, Judge?

12             THE COURT:  That's out.

13             MR. ARMSTRONG:  Okay.

14             THE COURT:  Next.  Now, you have some objections

04:40:01   15   or you want to offer some?

16             MR. WILLIAMS:  I'd like to offer some, Judge,

17   starting on Page 212.

18             THE COURT:  Okay.  Let's go back.

19             MR. WILLIAMS:  I'm sorry.  211.  My apologies.

04:40:12   20             THE COURT:  211.  Hang on one second.  Yeah, I

21   may have it.  Do we have this 212?  Hold it.  212.

22             LAW CLERK:  Have you got it?

23             THE COURT:  Okay.  Thank you.  All right.  What

24   have we got?

04:40:26   25             MR. WILLIAMS:  Starting at the question in the

1    middle of the page that says, "Okay.  Let's talk about

2    this 1,400 pills."

3            THE COURT:  Hold it.  Let me mark that.  From

4    there down to where?

04:40:41    5            MR. WILLIAMS:  Down to -- to actually, I believe,

6    this entire line of questioning starting there through the

7    end of my cross-examination on Page 212 or 215.  I'm

8    sorry.

9            THE COURT:  Okay.  To what?

04:40:59   10            MR. WILLIAMS:  From 211, when I first marked the

11   particular question, through 215.  I believe the line of

12   questioning deals with the prescriptions that were

13   written, which were obviously hydrocodone and Soma; and I

14   was wanting to explain to the jury how those worked and

04:41:18   15   what his assessment would be if, in fact, he saw the

16   patients and if, in fact, he spoke to the particular

17   patients about the effects of these particular opioids on

18   these particular patients.

19            THE COURT:  Okay.  What is your -- okay.  What is

04:41:33   20   your objection?  And then I'm going to start reading.

21            MR. ARMSTRONG:  Judge, we kept it very narrowly

22   tailored to just the specific details in the abstract

23   about the two drugs that squarely touches on the jury's

24   question.  Mr. Williams' proffer goes to these drugs as it

04:41:47   25   relates to a very specific patient.

1      THE COURT:  Okay.  Let me start reading.  I read

2  quickly.  Let me get my ruler and go down the line.

3  Through 215, correct?

4      MR. WILLIAMS:  Yes, Your Honor.

04:42:55  5      THE COURT:  Okay.  The government objects to

6  their tender of this to go to the jury, correct?

7      MR. ARMSTRONG:  Yes, Judge.

8      THE COURT:  Sustained.  It's out.  Next.

9      MR. WILLIAMS:  That's all I had, Judge.

04:43:09  10      THE COURT:  Okay.

11      MR. LEWIS:  I have two.

12      THE COURT:  Sure.  Okay.  Sure.  Go on.  Which?

13  Where about?

14      MR. LEWIS:  The first one is on Page 245, Page

04:43:24  15  Number 245.

16      THE COURT:  Hang on.  Page -- let's see if I have

17  that.  I have 245.  Thank you.  All right.

18      MR. LEWIS:  And it begins at -- there is no lines

19  on this page.

04:43:37  20      THE COURT:  Sure.

21      MR. LEWIS:  You see the answer "Soma" at the

22  bottom?

23      THE COURT:  Yes.

24      MR. LEWIS:  "ANSWER:  Soma."  Okay.  Beginning --

04:43:48  25  begin with the question.

1          THE COURT:  You are offering, "What drug is being

2    shown there?"

3          MR. LEWIS:  Yes.

4          THE COURT:  You want to start there?

04:43:54   5          MR. LEWIS:  Yes, that's correct.

6          THE COURT:  And it runs through where?

7          MR. LEWIS:  It runs through question --

8          MR. ARMSTRONG:  The next page.

9          MR. LEWIS:  No.  It goes through question -- I

04:44:06  10    mean, "ANSWER:  Take by mouth three times a day."

11          THE COURT:  All right.  Let me take a look.

12    Okay.  Response?

13          MR. ARMSTRONG:  Your Honor, again, this touches

14    on a very specific prescription as to a particular

04:44:26  15    patient.  It does not go into the details of the two drugs

16    in the abstract, which is the heart of the government's

17    view of the jury's question.

18          THE COURT:  All right.  So you object to this

19    testimony, correct, going in?

04:44:35  20          MR. ARMSTRONG:  Yes, Judge.

21          THE COURT:  Sustained.  Give me the next one,

22    sir.

23          MR. LEWIS:  The next one is on Page 246 beginning

24    at, "ANSWER:  That's Norco, which is hydrocodone."

04:44:50  25          THE COURT:  Where is that?

1       MR. LEWIS:  That's kind of in the middle of the
2  page.
3       THE COURT:  Okay.  That's Norco.  All right.  So
4  you are going to go to the question you want to get in,
04:44:58  5  "What is the drug shown there?"  Correct?
6       MR. LEWIS:  That is correct.
7       THE COURT:  Down through?
8       MR. LEWIS:  Down through the sentence that ends
9  "on that prescription."
04:45:08  10      THE COURT:  Okay.  Let me take a look.  What is
11  your objection?
12      MR. ARMSTRONG:  The same objection, Your Honor,
13  that it relates to a very specific prescription in a
14  patient file and not to the drugs in general.
04:45:23  15      THE COURT:  Sustain the objection.  It's out.
16      MR. LEWIS:  And the last tender, Judge, is
17  Page 247 --
18      THE COURT:  Okay.
19      MR. LEWIS:  -- at the top of the page.
04:45:39  20      MR. HELFMEYER:  We agree to it.
21      THE COURT:  You agree to it to let it in?
22      MR. HELFMEYER:  Yes, Judge.
23      THE COURT:  Okay.  So that's agreed to.  This is
24  what I suggest -- I'm sorry.  What else have you got?
04:45:48  25      MR. LEWIS:  It actually ends with "ANSWER:  Yes,

1  sir."

2           THE COURT:  Do you agree with that?

3           MR. ARMSTRONG:  Yes, Judge.

4           THE COURT:  All right.  They agree to it.

04:45:54   5      What I need you to do is to get the portion of the

6  transcript that you -- that I am giving to the jury.  All

7  right.  And if you need an extra copy, highlight just

8  those portions in sequence -- and I have got a copy up

9  here that's unmarked, I think, if you want to use this if

04:46:14  10  you need an extra copy.  All right.  These are the pages

11  that you had your problem with.

12      Why don't we -- I'm going to hand these to the

13  attorneys.  Why don't you now highlight all of the areas

14  that are going in, all right, and then hand them back up.

04:46:34  15  I'm going to sit here.  I'm going to go off the record.

16  You can use that empty table over there unless you have

17  one already.  It doesn't matter.  I have got extra sheets.

18           MR. ARMSTRONG:  Your Honor, I think that we have

19  most of them highlighted already, with the exception of

04:46:47  20  one page, which I have written on.  We can very quickly

21  highlight that and give it back to Your Honor.

22           THE COURT:  All right.  Off the record.

23       (Discussion off the record.)

24           MR. WILLIAMS:  Your Honor, may I address the

04:49:23  25  Court regarding where we are?

1          THE COURT:  Absolutely.  Do you want to get

2     something in the record?

3          MR. WILLIAMS:  It was my understanding that we

4     were going to allow the court reporter to read these

04:49:30   5     particular portions.

6          THE COURT:  Either that or Ellen can go back and

7     read it so the court reporter can leave.

8          MR. WILLIAMS:  So the actual portions that we

9     have highlighted will not go back to the jury.  They will

04:49:39  10     just be read the testimony?

11          THE COURT:  She will read it to the jury.

12        Ellen, if they ask you to reread it, fine.

13          CASE MANAGER:  Yes, sir.

14          THE COURT:  But just those portions and not

04:49:47  15     handing over any of the paperwork.  Any objections by the

16     government to that procedure?

17          MR. ARMSTRONG:  No, Your Honor.

18          THE COURT:  Any objection by the defendant to

19     that procedure?

04:49:56  20          MR. LEWIS:  No, Your Honor.

21          MR. WILLIAMS:  No, Your Honor.

22          THE COURT:  Also, Ellen, when you are through

23     there, I would assume they have to come back tomorrow.

24     But we'll just wait around to see if there is any problems

04:50:05  25     that arise while she is reading it.  That's right.  You

1    are going -- you are doing your volunteer work and so

2    you'll be here a little later tonight.

3              MR. ARMSTRONG:  Your Honor, for the record --

4              THE COURT:  She is volunteering in another court.

04:50:20    5              MR. ARMSTRONG:  Your Honor, for the record, I'm

6    handing Ms. Alexander the eight pages that the parties

7    have agreed to.

8              THE COURT:  Thanks for your work on this.  We'll

9    do that, and we will get a time.  As soon as you are done

04:50:29   10    there, Ellen, just get a time estimate officially from the

11    jury.  In other words, if that answers all the questions

12    and we'll stick around.  Okay.  If not, they can keep

13    going and get in as early as 9:00, but we will not be

14    available until 10:00.

04:51:09   15         (Recess from 4:51 p.m. to 5:50 p.m.)

16         *(Proceedings adjourned at 5:50 p.m. and continued on*

17    *Day 10.)*

18    *Date: March 7, 2018*

19                   ***COURT REPORTER'S CERTIFICATE***

20         *I, Laura Wells, certify that the foregoing is a*

21    *correct transcript from the record of proceedings in the*

22    *above-entitled matter.*

23

24              _____/s/ Laura Wells_____

25              *Laura Wells, CRR, RMR*

                          Laura Wells, CRR, RDR